Dorothea E. Donaldson, J.
This action is grounded on an allegation that the State, acting through the administrators of one of its mental hospitals, failed to abide by the provisions of sections 87 and 88 of the Mental Hygiene Law and that, as a direct result thereof, the claimant sustained serious injury. The State elected to rest at the conclusion of claimant’s case. The court will adopt as established the claimant’s recital of the facts supporting the claim.
On May 31, 1960, the claimant, her husband and infant daughter were driving in an automobile, owned and operated by Mr. Pernetti, in a southerly direction on New York State Route 17M in the vicinity of the Town of Wallkill in Orange County. At about 4:00 p.m., a rock was hurled through the passenger side of the front windshield. The court finds that the stone was thrown by one Theodore Smith, then a patient on convalescent status at Middletown State Hospital, a mental institution under the jurisdiction of the New York State Department of Mental Hygiene. In addition to the resultant property damage, the claimant sustained a fracture of the right zygomatic arch with associated injuries including lacerations and bruises. The driver stopped ,the car, then pulled off onto the center mall. The investigating State trooper, who arrived at the scene a short while later, testified that some 10 cars had halted along the road, all of them having been damaged in varying degree by thrown rocks. The trooper subsequently apprehended Smith and having been advised by police headquarters that Smith was a former patient at Middletown and that the hospital would readmit him, searched the suspect and then drove him to the hospital and escorted him to its admitting room.
Meanwhile, an ambulance had been summoned for Mrs. Pernetti. She was taken to Mary Horton Hospital in Middletown where she remained for treatment and observation for a period of some five days. Upon her discharge she returned home, was treated by her own physician and by a plastic surgeon, the decision eventually being made to have her admitted to St. *584 Catherine’s Hospital in Brooklyn-for remedial surgery. The admission was effected but the prospective surgery was abandoned and the patient was subsequently released. Dr. Joseph V. Caltagirone, the surgical consultant involved in Mrs. Pernetti’s treatment, testified that the cheek depression, sinus involvement and scarring resulting from the assault would be permanent although an 80% improvement in the scar could be accomplished by further surgical intervention.
The claimant called as a witness Dr. Solomon Kleiner, the clinical director of psychiatry at Middletown Hospital. He stated that Theodore Smith was first admitted in September or October, 1958 at the age of 18 or 19. In May, 1960, Smith was released on convalescent status to his father who was considered a steadily employed, reliable person. The decision to grant such a release was an exercise of professional judgment. (Schwenk v. State of New York, 205 Misc. 407.) Even if the claimant had shown that the judgment was faulty, where the physicians are competent and their professional judgment is made in good faith, liability for subsequent tortious acts of a convalescent does not attach to the State. (St. George v. State of New York, 283 App. Div. 245, affd. 308 N. Y. 681.)
The claimant, however, does not seek a determination that the hospital authorities were incompetent or that their decision to place Smith on convalescent status was not made in good faith. Bather, liability in claimant’s posttrial brief if not in his pleadings or in the trial of the action itself is predicated upon a failure to observe the mandates of sections 87 and 88 of the Mental Hygiene Law. These, read together, permit the Director of a State hospital to grant convalescent status to a patient where, in the Director’s judgment, the discharge will not be detrimental to the public welfare or injurious to the patient. At the time this cause of action is alleged to have accrued, the statute contained a proviso that the discharge was conditioned upon the Director determining, by sufficient proof, that ‘ ‘ friends or relatives of the patient are willing and financially able to receive and properly care for such patient after his discharge ”. (Mental Hygiene Law, § 87, subd. 3.) The patient is to have clothing appropriate to the season and, if necessary, up to $50 to defray expenses until relatives or friends can be reached or employment' obtained. It is the claimant’s thesis that these provisions were violated.
There is, however, nothing in the record to substantiate a finding that the hospital authorities were delinquent. No proof was adduced that the release of the patient was not undertaken in full compliance with the law. True, Dr. Kleiner was *585 unable to recall the exact circumstances surrounding the discharge, but this failure to remember, standing alone, could not justify a finding that the release was improper. Nor can the fact that Smith was endeavoring to solicit a free automobile ride on the date involved be considered of probative value in showing that he was without means to purchase transportation. The statute does not require that the transportation of a convalescent patient be supervised or arranged by the State. On the other hand, the statute does provide that liability for a'convalescent patient’s expenses “shall devolve upon the relative, committee or person to whose care the patient is entrusted ”. (Mental Hygiene Law, § 87, subd. 1, par. d.)
But, even if the proof had shown that violations of the cited sections had, in fact, occurred, it is difficult to see how the claimant would thus be aided in her present suit. Mere failure to observe the terms' of a statute or ordinance does not necessarily impose civil liability. A preliminary determination is required to the effect that the intent of the enacting body was to create such liability. The terms of the legislation itself, its surrounding documentation, its history and development, both legislative and judicial, must all be examined with a view toward establishing that a civil cause of action was, in fact, created. The claimant then must further show that he is within the class sought to be protected and, further, that the harm to which he has been subjected is within the definition contemplated by the Legislature. The class of persons sought to be protected by sections 87 and 88 is limited to the patients involved, not the public at large. Furthermore, the harm suffered was not of the type which the statute was intended, in general, to prevent. “ [T]he damage is of -such a nature as was not contemplated at all by the statute, and as to which it was not intended to confer any benefit on the plaintiffs.” (Gorris v. Scott, 1874, L. R. 9 Ex. 125, quoted in Prosser, Torts [2d ed.], p. 157.)
The motions made by the defendant at the conclusion of the claimant’s case and renewed at the conclusion of the trial are granted. The claim must be, and hereby is, dismissed.